**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

Alvin R. Ross,

Plaintiff,

v.

William McGuinness, M.D., et al.,

Defendants.

No. CV-1-08-0306-MHM

**ORDER**

Plaintiff Alvin R. Ross, an inmate at California State Prison, Corcoran ("CSP Corcoran"), brought this civil rights action under 42 U.S.C. § 1983 and California law. Pending before the Court is Defendants William J. McGuinness M.D.'s, Julian Kim M.D.'s, and David G. Smith M.D.'s Motion for Summary Judgment. (Doc. 52) The Court has considered the arguments of the parties set forth in their briefs, as well as the record before it, and now enters its ruling.

**1. Background**

Plaintiff filed this action on March 3, 2008. (Doc. 1) On September 12, 2008, the Court issued an order finding that Plaintiff's complaint stated cognizable claims against Defendants McGuinness, Smith, and Kim for violation of the Eighth Amendment and negligence under California law, but that it did not state a cognizable claim against Defendant Medical Appeals Analyst J. Tercero or a cognizable equal protection claim. Accordingly, the Court ordered Plaintiff to either file an amended complaint or notify the

Court of his willingness to proceed only on the claims found to be cognizable. On September 22, 2008, Plaintiff notified the Court that he was willing to proceed on the claims found cognizable.

Plaintiff seeks monetary damages and injunctive relief based on alleged violations of the Eight Amendment. In addition, Plaintiff alleges negligence in violation of California tort law.

The following facts are taken from Plaintiff's complaint (Doc. 1) and the court documents submitted by Plaintiff (Docs. 50, 51). According to the complaint, Plaintiff injured his shoulder sometime between 1995 and 1996. (Doc. 1, p. 6) Plaintiff began complaining regularly about shoulder pain and numbness in his left arm and hand, which he attributed to either a "pinched nerve" in his shoulder or a cyst growing in his left wrist. (Id.) In August 2005, Dr. Smith,[1] an orthopedic surgeon, operated on Plaintiff's left wrist and removed a ganglion cyst. (Id.; Doc. 51,[2] pp. 11-14). In an October 2005 post-operative visit, Plaintiff reported that he continued to experience numbness and tingling in the fingers of his left hand. Accordingly, Dr. Smith ordered nerve conduction tests to rule out carpel tunnel syndrome. (Id., p. 11) Following a November 16, 2005 examination, Dr. Smith requested that Plaintiff be seen in the orthotics clinic for issues with his shoes. (Id., p. 12)

In 2007, Plaintiff experienced neck and shoulder pain and was diagnosed as suffering from degenerative disc disease in his cervical spine and a torn rotator cuff. (Id., pp. 4-8) A doctor at CPS Corcoran referred Plaintiff to Dr. Mahmoud Rashidi, a specialist in Bakersfield, California, because no doctor at CPS Corcoran had the expertise to treat Plaintiff's condition. (Doc. 50,[3] p. 9)

---

[1] Dr. Smith worked at CPS Corcoran as a contract physician one day per week during the time relevant to Plaintiff's complaint. (Doc. 33-6, p. 4; Doc. 40, p. 9)

[2] Plaintiff's "Court Evidence Exhibits Set No. 2."

[3] Plaintiff's "Court Evidence Exhibits Set No. 1."

Plaintiff claims that his shoulder pain persisted and that he filed an inmate grievance or "602" because he was being "denied adequate, sufficient medical care." (Doc. 1, Ex. A) Dissatisfied with the response at the first level of review, Plaintiff appealed this decision. (Id., Ex. B) Dr. McGuinness, the Chief Medical Officer ("CMO") at CPS Corcoran, reviewed the appeal. Dr. McGuinness responded to Plaintiff's request to be seen by the CMO at CSP Corcoran and informed him that prison medical records did not have any such request on file from Plaintiff, and further, that inmates are not allowed to choose their care provider. (Id.) Dr. McGuinness noted that Family Nurse Practitioner N. Loadholt was Plaintiff's primary care provider and that she had examined Plaintiff at the very least every ninety days as a chronic care patient and sometimes more often. Dr. McGuinness further noted that an appointment with an orthopedist had been scheduled for Plaintiff and that Plaintiff had been prescribed Tylenol[4] 325 milligrams up to two times per day to alleviate his pain. (Id.) Dr. McGuinness deemed the appeal "partially granted" since Plaintiff received a full response to his appeal. (Id.) Plaintiff was dissatisfied with Dr. McGuinness' response and accused Dr. McGuinness of "lecturing" him on prison regulations instead of treating him. (Doc. 1, pp. 10, 19-21)

According to the complaint, Dr. Kim first examined Plaintiff in November 2007. (Doc. 1, p. 12)[5] Dr. Kim next examined Plaintiff on November 15, 2007, and thereafter referred Plaintiff to an orthopedist for further care for his shoulder. (Docs. 1, 51 p. 42).

Dr. Kim examined Plaintiff on eight occasions from August 2007, through March 2008, and eventually referred Plaintiff to a neurosurgeon for further care. (Doc. 51, pp. 41-50) When the neurosurgeon recommended surgery to Plaintiff on February 9, 2009, Plaintiff declined the surgery. (Id., p. 45.)

/ / /

---

[4] A brand name for Acetaminophen.

[5] Plaintiff's submitted medical records show, however, that Dr. Kim first examined Plaintiff on August, 27, 2007. (Doc. 51, p. 41)

**II. Summary Judgment Standard**

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the movant meets its burden with a properly supported motion, the burden then shifts to the nonmovant to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmovant need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). By affidavit or as otherwise provided by Rule 56, the nonmovant must designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076. The nonmovant may not rest upon the pleadings' mere allegations and denials, but must present evidence of specific disputed facts. See Anderson, 477 U.S. at 248.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Id. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255.

/ / /

/ / /

**III. Deliberate Indifference to Medical Needs**

Plaintiff claims that Drs. McGuinness, Smith and Kim were deliberately indifferent to his serious medical needs by denying and delaying medical treatment to alleviate his excruciating pain and suffering. (Doc. 1, p. 9) Plaintiff bears a substantial burden to prove deliberate indifference under the Eight Amendment. "The unnecessary and wanton infliction of pain upon incarcerated individuals under color of law constitutes a violation of the Eighth Amendment . . . ." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991). A violation occurs when prison officials deliberately are indifferent to a prisoner's medical needs. Id. As the Ninth Circuit stated in Toguchi v. Chung, 391 F.3d 105 (9th Cir. 2004), the threshold for a medical claim under the Eighth Amendment is extremely high: A prison official acts with "deliberate indifference . . . only if [he] knows of and disregards an excessive risk to inmate health and safety." Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and quotation marks omitted). Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson, 290 F.3d at 1188 (citation and footnote omitted). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Farmer, 511 U.S. at 839. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. McGuckin, 974 F.2d at 1059 (citation omitted).

Deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm. Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003) (citations omitted); see also Gibson, 290 F.3d at 1197 (acknowledging a plaintiff may demonstrate that officers "must have known" of a risk of harm by showing the medical need was obvious and extreme). Delay in medical treatment can amount to deliberate indifference if: (1) the delay seriously affected the medical condition for which plaintiff was seeking treatment, and (2) defendants

were aware the delay would cause serious harm. Shapley v. Nevada Board of State Prison Commissioners, 766 F.2d 404, 408 (9th Cir. 1985). To state a claim defendants provided constitutionally inadequate medical care, plaintiff must allege acts or omissions evidencing identified defendants knew of and disregarded plaintiff's serious medical needs. Estelle, 429 U.S. at 106; Farmer, 511 U.S. at 837. Neither defendants' negligence nor plaintiff's general disagreement with the treatment he received suffices to state a claim. Estelle, 429 U.S. at 106; Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988); Jackson v. McIntosh, 90 F.3d 330, 331 (9th Cir. 1996). A medical need is serious if the failure to treat the prisoner's condition could result in further significant injury or the " 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at1059 (quoting Estelle, 429 U.S. at 104).

When a plaintiff seeks to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the Eighth Amendment deprivation must be more refined. Id. The court must focus on whether the individual defendant was in a position to take steps to avert the [harm], but failed to do so intentionally or with deliberate indifference . . . . [I]n order to prevail and recover damages against any of the named prison officials, the plaintiff in this case must prove (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the Eighth Amendment and (2) that this indifference was the actual and proximate cause of the deprivation of plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Id. at 633-34.

**A. Dr. McGuinness**

Dr. McGuinness maintains that his response to Plaintiff's 602 grievance appeal cannot form the basis of liability under § 1983. Dr. McGuinness contends that however unkind Plaintiff may believe the language of the response was, the response addressed his complaints and is insufficient to violate his constitutional rights.

In his response, Plaintiff contends that in responding to Plaintiff's 602 grievance appeal, Dr. McGuinness had "personal knowledge of Plaintiff's medical need and pain management," yet "failed to take reasonable action to abate Plaintiff's problem and serious

pain" and thus is liable under § 1983. Plaintiff also contends that Dr. McGuinness is liable because he is "responsible for his subordinates."

In his reply, Dr. McGuinness asserts that to the extent that he may have had "personal knowledge" of Plaintiff's medical condition because he responded to Plaintiff's grievance appeal, neither such knowledge nor his administrative response can form the basis for liability under § 1983.

Defendant is correct that actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). Any claim based on the simple failure to grant an administrative appeal or process it properly is not cognizable in a § 1983 action because there is no constitutional right to a prison administrative appeal or grievance system for California inmates. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). The state of California has not created a protected interest in an administrative appeal system in prison. California Code of Regulations, title 15 sections 1073 and 3084, et seq., grants prisoners in the county jails and state prisons a purely procedural right: the right to have a prison appeal. The regulations simply require the establishment of a procedural structure for reviewing prisoner complaints and set forth no substantive standards; instead, they provide for flexible appeal time limits, see Cal. Code Regs. tit. 15, § 3084.6, and, at most, that "no reprisal shall be taken against an inmate or parolee for filing an appeal," id. § 3084.1(d). A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. See Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993); see also Antonelli, 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause). Plaintiff had no federal constitutional right to a properly functioning appeal system. An incorrect decision on an administrative appeal or failure to process the appeal in a particular way therefore did not amount to a violation of his right to due process.

Plaintiff's contention that Dr. McGuinness violated § 1983 for "fail[ing] to take reasonable action to abate Plaintiff's problem and serious pain" is not supported by law. Only persons who cause or participate in the violations are responsible. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007), citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).

Mr. Ross's argument that Dr. McGuinness is liable because he is "responsible for his subordinates . . ." also fails as a matter of law. "Liability under (section) 1983 arises only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); see Hedrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006) (supervisors are only liable for actions of subordinates under § 1983 when the supervisor participated in, directed, or knew of the violations and failed to act to prevent them).

Further, Plaintiff's own evidence does not support Plaintiff's contention that Dr. McGuinness failed to respond to his medical needs. A review of Plaintiff's 602 inmate grievance attached to his complaint shows that Plaintiff requested to "be seen by a Medical Doctor or CMO" and "be issued some sort of treatment to alleviate [his] constant pain." (Doc. 1, Ex. A) In his response, Dr. McGuinness noted that Plaintiff was being seen by his primary care physician on a regular basis, that an appointment for an orthopedic consultation would be scheduled, and that Plaintiff had been prescribed Tylenol up to 650 milligrams two times a day for pain. (Doc. 1, Ex. B) Indeed, this evidence supports the conclusion that Dr. McGuinness adequately responded to Plaintiff's requests regarding his medical care. At most, Plaintiff establishes a disagreement with Dr. McGuinness' response. Plaintiff, however, has not demonstrated a material factual dispute that Dr. McGuinness disregarded an excessive risk to Plaintiff's health and was deliberately indifferent. See Toguchi, 391

F.3d at 1058. The Court will therefore grant summary judgment to Dr. McGuinness on Plaintiff's § 1983 claim.

**B. Dr. Smith**

Dr. Smith contends that he performed surgery on Plaintiff's left wrist to remove a ganglion cyst in 2005.[6] Dr. Smith prescribed medication and instructed Plaintiff to return for follow-up care and seek additional care if necessary. (Doc. 1, p. 6) Dr. Smith last examined Plaintiff in 2007. (Doc. 51, pp. 11-15) Dr. Smith contends that "[i]n a declaration submitted as part of "set 1 of 2" of Plaintiff's "court exhibits," [Plaintiff] in documents submitted by Plaintiff, Plaintiff admits that Dr. Smith ordered a 'nerve conduction test,' multiple MRI exams of his shoulder and further ordered a CT scan." (Doc. 50, pp. 79-81.) Dr. Smith asserts that this extensive diagnostic testing, combined with the lack of any evidence that Dr. Smith ignored Plaintiff's pain, completely contradict Plaintiff's claims that he knowingly ignored a risk of harm to Plaintiff.

Plaintiff responds that "Dr. Smith, never requested X-rays, CT Scans, or multiple MRI's as stated in the [Motion for Summary Judgment] and there's no evidence to support this statement." Plaintiff contends that Dr. Smith "obtained significant knowledge concerning Plaintiff and chose to do nothing about it."

In his reply, Dr. Smith contends that Plaintiff's allegation that he did "nothing" to provide Plaintiff adequate medical care is contradicted by Plaintiff's own evidence.

Indeed, a review of Plaintiff's "Court Evidence Exhibits," supports a conclusion that Dr. Smith was not indifferent to Plaintiff's serious medical needs. In Paragraph 5 of Plaintiff's Declaration at pages 79-80 of Plaintiff's "Court Evidence Exhibits Set No. 1," Plaintiff states that Dr. Smith ordered a Nerve Conduction Test for him on October 5, 2005. (Doc. 50, pp. 79-80.) In paragraphs 19, 20 and 27 of this Declaration, Plaintiff discusses having a CT scan (Plaintiff refers to this as a "CAT scan,") and two MRI scans. In the

---

[6] Dr. Smith also states that he performed surgery on Plaintiff's ankle, but in his Reply, acknowledges that this was a misstatement and that he had instead performed surgery to remove a bone spur on Plaintiff's right fifth toe. (Doc. 51, p. 52)

section of his "Court Evidence Exhibits" that contain "Inmate Priority Pass forms" ( Doc. 50, pp. 3-4), Plaintiff writes, "Dr. Smith ordered MRI" for an April 18, 2007 appointment; "MRI conducted on Neck area via Dr. Smith" for what purportedly was an MRI "Conducted 2nd time" on February 4, 2008 (Doc. 50, p. 4); and "Dr. Smith Re-ordered MRI and issued Cortizone (sic.) shot and pill" on a January 15, 2008 appointment form. (Doc. 50, p. 4.)

Plaintiff's evidence shows that Dr. Smith treated Plaintiff over a two-year period; he performed two surgeries on Plaintiff, provided follow-up care, prescribed medication, and ordered radiological testing. That fact that Dr. Smith did not treat Plaintiff after 2007 does not support an inference that Dr. Smith knew of and disregarded Plaintiff's serious medical needs. Accordingly, because Plaintiff has not demonstrated a material factual dispute that Dr. Smith disregarded an excessive risk to Plaintiff's health and was deliberately indifferent, see Toguchi, 391 F.3d at 1058, the Court will grant summary judgment to Dr. Smith on Plaintiff's § 1983 claim.

**C. Dr. Kim**

Dr. Kim contends that Plaintiff's only basis for his § 1983 claim against Dr. Kim is Plaintiff's allegation that Dr. Kim would not give him Acetaminophen for his left shoulder pain. (Doc. 1, p. 12) Dr. Kim contends that the medical records Plaintiff submitted to this Court (which he claims consist of all relevant records of his damages, see Doc. 49) do not support this contention. Dr. Kim asserts that the records reveal that he ordered several different medications for Plaintiff, including Acetaminophen. These medications include: Nitroglycerin, Amlodipine, "ASA Ec 8 mg.," Omeprazole, Atenolol, Hydrochlorothiazide (HCTZ), Aspirin and Acetaminophen, Rosuvastatatin, and Prilosec.[7] (Doc. 51, pp. 41-42, 48-50.) The Acetaminophen ordered during one of Plaintiff's consults with Dr. Kim on

---

[7] Acetaminophen is commonly prescribed to reduce inflammation that causes pain. (see Merck Manual, 18th Ed. 2005). The other medications prescribed to Plaintiff are commonly prescribed for treatment of high blood pressure, congestive heart failure, cirrhosis of the liver, or kidney disorder. (See Drug Information Online, available at www.drugs.com). Aspirin is considered a nonopioid analgesic. (Merck Manual, 18th Ed. 2005.) Aspirin is recommended for relief of mild to moderate pain. (Merck Manual, 18th Ed. 2005.)

August 27, 2007, was for 650 milligrams, double the amount Plaintiff's complaint claimed Dr. Kim refused to prescribe. (Id., p. 41)

Furthermore, Plaintiff's evidence reveals that Dr. Kim examined Plaintiff on eight occasions from August 2007, through March 2008, and eventually referred Plaintiff to a neurosurgeon for further care. (Doc. 51, pp. 41-50) Accordingly, in light of Plaintiff's own evidence regarding Dr. Kim's treatment, the court finds that Plaintiff has not demonstrated a material factual dispute that Dr. Kim disregarded an excessive risk to Plaintiff's health and was deliberately indifferent. See Toguchi, 391 F.3d at 1058. The Court will therefore grant summary judgment to Dr. Kim on Plaintiff's § 1983 claim.

In light of the forgoing,

**IT IS ORDERED** granting Defendants' Motion for Summary Judgment. (Doc. 52)

**IT IS FURTHER ORDERED** remanding Plaintiff's medical negligence claim to state court for further proceedings.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment in favor of Defendants and terminate the case.

DATED this 31st day of March, 2011.

Mary H. Murguia
United States District Judge